A04A1662. LANIER v. THE STATE.

(603 SE2d 772)

BLACKBURN, Presiding Judge.

Following his conviction of felony theft by shoplifting[1] and the denial of his motion for new trial, Eric Lanier appeals, contending that: (1) the evidence was insufficient to support his conviction because the State failed both to produce evidence or testimony from

---

[1] OCGA § 16-8-14.

the owner of the merchandise that he deprived the owner of possession, and also to prove the value of the merchandise taken; and, (2) the State improperly introduced evidence of his character into the trial. For the reasons set forth below, we affirm.

1. Lanier contends that the evidence was insufficient to support his conviction for felony theft by shoplifting.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for determining the sufficiency of the evidence to support a conviction. On appeal, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. This Court does not weigh the evidence or determine witness credibility, but only determines if the evidence was sufficient for a rational trier of fact to find [Lanier] guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia.*[2]

(Citations and punctuation omitted.) *Hunt v. State.*[3]

Viewed in a light most favorable to the jury's verdict, the evidence shows that, on November 5, 2000, Roman Jones, an officer with the Muscogee County Sheriff's Department who also works for Stein Mart as a loss prevention employee, was on duty at a Stein Mart in Columbus when he saw Lanier remove several jackets from a "high dollar" rack and put them in a bag. When Lanier saw Jones, who was standing about 20 feet away, he ran. Jones, who recognized Lanier, called out his name; Lanier ran from the store into the parking lot, jumped into a waiting car, and fled.

Following Lanier's escape, Jones and an associate in the men's clothing department did an inventory of the merchandise on the rack, checking it against a list that had been verified earlier in the day, and determined that three Polo jackets and two leather jackets, with a value in excess of $550, had been taken. Jones also called the police. When Officer Johnny Elias arrived, Jones told him that Lanier had done the shoplifting. Jones testified at trial that he recognized Lanier as an employee he had trained for nine weeks at a mill in the late 1970s or early 1980s. He stated that he had seen and spoken with Lanier a week before the shoplifting incident in the parking lot of a K-Mart; he also said that he had seen Lanier three times since the shoplifting incident and on each occasion, Lanier had fled when he saw Jones.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Hunt v. State*, 261 Ga. App. 417 (1) (582 SE2d 493) (2003).

(a) Lanier first contends that the evidence was insufficient to support his conviction for felony theft by shoplifting because the State failed to produce testimony from anyone indicating that he or she exercised ownership of the property and that he deprived the owner of possession of the property. There is no merit to this enumeration of error.

The accusation filed against Lanier specifically charges him with taking "the property of Stein Mart, a retail establishment." Officer Jones testified that shortly after he arrived for work at Stein Mart, he conducted an inventory of the coats for sale to the public on the "high dollar rack." Later that day, he saw Lanier remove coats from the rack in the Stein Mart store, place them in a bag, and then flee from the store. "Reasonable certainty of ownership is all that is required." *Gerdine v. State*.[4] From Jones's testimony, it can be inferred that the coats were owned by Stein Mart. *Earley v. State*[5] ("[i]t can be inferred from the fact that the goods were on sale in a supermarket that such property was owned by the supermarket. The ostensible ownership is, however, enough to justify the description. So far as the thief is concerned, he can not question the title of the apparent owner.") (punctuation omitted). This evidence of ownership was sufficient.

Lanier also maintains, in making this argument, that in order for him to know exactly what charge he would be called upon to meet at trial, the indictment must set forth the name of the owner of the property charged to have been stolen or set forth facts sufficient to explain and excuse the omission. Such a challenge to the indictment should have been made by way of a special demurrer.

> A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment and may be raised anytime; the special objects merely to its form or seeks more information and must be raised before pleading to the indictment. A special demurrer is waived if not raised before pleading to the merits of the indictment.

(Punctuation omitted.) *Dillard v. State*.[6] To the extent that this enumeration of error objects to the sufficiency of the form of the indictment, the objection is deemed waived.

---

[4] *Gerdine v. State*, 136 Ga. App. 561, 562 (1) (222 SE2d 128) (1975).
[5] *Earley v. State*, 155 Ga. App. 576, 577 (1) (271 SE2d 709) (1980).
[6] *Dillard v. State*, 147 Ga. App. 587, 588 (2) (249 SE2d 640) (1978).

(b) Lanier also argues that the State failed to prove the value of the stolen merchandise and thus failed to establish that the value of the merchandise was greater than $300 as required by OCGA § 16-8-14 (b) (2). We do not agree.

> A person commits theft by shoplifting when he conceals or takes possession of the goods or merchandise of any store or retail establishment with the intent of appropriating the merchandise to his own use without paying for the same. The offense is punished as a misdemeanor if the value of merchandise taken is $300 or less. The offense is a felony if the value of merchandise taken is greater than $300.

(Citations omitted.) *Bell v. State.*[7]

Officer Jones testified that he had worked as a loss prevention employee at Stein Mart for five years, that part of his job was to check the high dollar items in order to be able to determine if any merchandise was missing, and that on the day of the shoplifting, he had taken an inventory of the high dollar jackets by checking the coats on the rack against the list of jackets kept by the men's associates to make sure the list was correct. Jones also testified that after Lanier fled with the jackets, he and another employee conducted an inventory and determined that three Polo jackets and two leather jackets had been taken, and that the value of the stolen jackets was over $500, well in excess of the statutory $300 required for a felony conviction. When a police officer arrived, Jones told him what had been taken and the value of the stolen merchandise. This amount was included in the report prepared by the officer and was reflected in the arrest warrant, which set forth the value of the merchandise as $519.18.

Jones's testimony established that he had knowledge, experience, and familiarity with the value of the men's clothing taken from the Stein Mart. *Pippin v. State.*[8] Through his review of the list of merchandise on the rack, his checking of the items on the rack against the inventory list, and his determination of which items were missing and how much each missing item was worth, he also had personal knowledge of the items and their prices. *Bell*, supra at 789. The trial court did not err in letting him testify as to his personal knowledge of the value of the stolen merchandise. Id.

2. Lanier next maintains that the State improperly introduced evidence of his character. The evidence to which Lanier objects came

---

[7] *Bell v. State*, 262 Ga. App. 788-789 (586 SE2d 455) (2003).
[8] *Pippin v. State*, 166 Ga. App. 658, 659 (305 SE2d 408) (1983).

out during the testimony of Officer Elias, the officer who had responded to the call at Stein Mart. On direct examination, Elias stated that Jones had identified Lanier as the individual who had shoplifted the jackets. When the attorney for the State asked if Jones had told him how he knew the defendant, Elias replied, "He said he knowed him from the jail and other places." The trial court immediately instructed: "Members of the jury, you will disregard the last statement of the witness. Do not consider it. Do not give it any credibility." Lanier subsequently moved for a mistrial.

> When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. It is up to the trial court to decide whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the testimony from the consideration of the jury under proper instructions. Whether to grant a motion for mistrial lies largely within the trial court's discretion, especially if the motion is triggered by a witness's remark that was not invited by the court or opposing counsel. If the trial court properly instructs the jury and the remark is not so prejudicial that it violates the defendant's right to a fair trial, we will not reverse the court's decision. Additionally, mere mention that a defendant has been in jail falls short of placing his character at issue.

(Citations and punctuation omitted.) *Roaderick v. State.*[9]

In this case, the trial judge gave immediate curative instructions following the comment; further, as stated above, "mere mention that a defendant has been in jail falls short of placing his character at issue." Moreover, even if there were error, in light of the fact that the evidence against Lanier was overwhelming, "it is highly probable that the error did not contribute to the judgment. Therefore, the error, if any, is harmless." *Mims v. State.*[10] Accordingly, "we find no abuse of discretion in the [trial court's] denial of the motion for mistrial." (Punctuation omitted.) *Roaderick,* supra at 75.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED AUGUST 26, 2004.

---

[9] *Roaderick v. State,* 257 Ga. App. 73 (570 SE2d 382) (2002).
[10] *Mims v. State,* 180 Ga. App. 3, 5 (2) (348 SE2d 498) (1986).

*Hagler, Hyles & Adams, Clark C. Adams, Jr.,* for appellant.

*J. Gray Conger, District Attorney, Michael E. Craig, Assistant District Attorney,* for appellee.